ROBERTS, Justice,
for the Court:
Charles Washington pled guilty to the crimes of armed robbery and aggravated assault on May 31, 1988 in the Leflore County Circuit Court before the Honorable Durward Gray Evans. On June 17, 1988, Washington was sentenced to serve a term of twenty-five (25) years for armed robbery and ten (10) years for aggravated assault, with the sentences to be served concurrently-
On May 24, 1991, Washington filed a Motion to Vacate and Set Aside or in the alternative Motion to Correct Sentence under the Uniform Post-Conviction Collateral Relief Act. The Circuit Court overruled this motion on May 31, 1991. Washington appeals the denial of this motion and asserts the following three errors:
I.
WASHINGTON’S GUILTY PLEAS WERE NOT KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY MADE IN COMPLIANCE WITH RULE 3.03 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PROCEDURE.
II.
WASHINGTON DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
III.
WASHINGTON SHOULD HAVE RECEIVED AN EVIDENTIARY HEARING ON HIS CLAIMS.
We find that Washington is entitled to an evidentiary hearing, and accordingly, we reverse.
STATEMENT OF THE FACTS
On or about February 18,1988, Washington was charged with armed robbery of a jewelry store and the aggravated assault of the owner of the store. On May 31, 1988, Washington entered a plea of guilty after first pleading not guilty to the charges after conferring with counsel on this matter. Washington was sentenced to twenty-five years for Armed Robbery and ten years for Aggravated Assault, with the sentences to run concurrently.
The statute under which Washington was sentenced has a mandatory ten year period to be served before the prisoner is eligible for parole. Washington contends that he was not advised of the mandatory period by either his attorney or the trial judge. In fact, Washington alleges that his attorney led him to believe that he would be eligible for parole in six years and three months, as any “regular prisoner.” Washington alleges that it was not until he was imprisoned at the Mississippi State Penitentiary at Parchman that he learned he was required to serve a mandatory ten year sentence before becoming eligible for parole.
On May 24, 1991, Washington filed a Motion to Vacate and Set Aside or in the alternative Motion to Correct Sentence under the Uniform Post-Conviction Collateral Relief Act, Miss.Code Ann. §§ 99-39-1 through 99-39-29 (Supp.1992). The Circuit Court overruled the Motion by Order dated May 31, 1991. Washington appealed to this Court.
DISCUSSION OF THE ISSUES
I.
WERE WASHINGTON’S GUILTY PLEAS KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY MADE IN COMPLIANCE WITH RULE 3.03 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PROCEDURE? [1]
Pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. *968 Code Ann. §§ 99-39-1 through 99-39-29 (Supp.1992), a petitioner is entitled to an in-court opportunity to prove his claims if the claims are “procedurally alive ‘substantially] showing denial of a state or federal right.’ ” Horton v. State, 584 So.2d 764, 767 (Miss.1991) (quoting Neal v. State, 525 So.2d 1279, 1281 (Miss.1987)). Accordingly, this Court must decide whether Washington is entitled to an evidentiary hearing where he will have an opportunity to prove his claims.
In Vittitoe v. State, 556 So.2d 1062 (Miss.1990), this Court stated:
[b]efore a person may plead guilty to a felony he must be informed of his rights, the nature and consequences of the act he contemplates, and any relevant facts and circumstances, and thereafter, voluntarily enter the pleas. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The question necessarily involves issues of fact. Sanders v. State, 440 So.2d 278, 283 (Miss.1983). Over the years the law has provided a number of criteria for judging charges of involuntariness, such as the quality of the advice of counsel. Leatherwood v. State, 539 So.2d 1378, 1388 (Miss.1989).
Vittitoe, 556 So.2d at 1063. See also Myers v. State, 583 So.2d 174 (Miss.1991); Wilson v. State, 577 So.2d 394 (Miss.1991). Furthermore, a sentence and conviction based upon a guilty plea where a defendant was not made aware of a mandatory minimum sentence at the time of the plea can be reversed. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992) (citing Vittitoe v. State, 556 So.2d 1062 (Miss.1990)). In Alexander, the defendant alleged that he pled guilty to armed robbery after his attorney assured him that he would be eligible for parole after serving one-fourth of his sentence, that is, three years and nine months. The defendant did not learn that there was a mandatory ten year sentence required for an armed robbery conviction until he arrived at the penitentiary. This Court reversed and remanded the defendant’s case for an evidentiary hearing to be held on the questions of ineffective assistance of counsel, and whether the defendant’s guilty plea was made knowingly,, voluntarily and intelligently. Alexander, 605 So.2d at 1171-1172.
Washington contends that at no time was he advised either by his counsel or by the trial judge that there was a mandatory minimum sentence he would have to serve before becoming eligible for parole. Washington was convicted and sentenced under § 47-7-3 Miss.Code Ann. (1972), as amended. It states in pertinent part:
(d) No person shall be eligible for parole until he shall, on or after January 1, 1977, be convicted of robbery or attempted robbery through the display of a firearm until he shall have served ten (10) years_ The provisions of this paragraph (d) shall also apply to any person who shall commit robbery or attempted robbery on or after July 1, 1982, through the display of a deadly weapon. [Emphasis added].
The emphasized portion of the statute is important. Washington committed armed robbery with a knife, not a firearm. However, as he committed the crime in 1988, the mandatory ten year sentence was to be applied to his case.
In reviewing the transcripts of Washington’s change of plea hearing and his sentencing hearing, there is a definite indication that both the assistant district attorney during the change of plea, and Washington’s attorney during the sentencing hearing, as well as the trial judge, were confused or misinformed as to the statute under which Washington was pleading guilty. In the change of plea hearing, the following transpired between the trial judge, the assistant district attorney and Washington:
Q. [BY THE COURT]: ... You are entering an open plea, Mr. Washington. That means that the State does not have to make a recommendation to the Court and you are charged here with armed robbery and aggravated assault. The statute on armed robbery, if the Court *969 determines to give you a term of years in the Penitentiary, the statute on armed robbery provides that you are not eligible for parole for a period of....
BY MRS. BOUCHARD [Assistant District Attorney]: No, sir, this is not with a firearm. This is with a knife.
BY THE COURT: This is not with a firearm. All right, excuse me.
Q. Do you understand that the Court could give you as much as....
BY MRS. BOUCHARD: Up to ...
BY THE COURT: Or up to ...
BY MRS. BOUCHARD: .... six months of his life’s expectancy.
Q. ... up to the approximate time of your life expectancy, and life expectancy is figured by .. by looking at a table put out the Census Bureau and the Department of Commerce of the United States in determining what a .. the life expectancy of a black male. Your present age, how old are you?
A. [Washington] Nineteen.
Q. A black male, nineteen years old, what your average life expectancy is, and I could give you a term of years in the Penitentiary slightly less, six months less than .. up to six months less than that shows as your life expectancy. Do you understand that?
A. I understand.
Q. And on the aggravated assault up to twenty years in the Penitentiary; do you understand that?
A. Yes, sir_
The trial court’s explanation regarding the maximum sentence possible for the armed robbery is not clear. More importantly, the trial judge seemed to make an attempt to explain that there was a mandatory sentence for armed robbery when he was interrupted by the assistant district attorney who misinformed the judge as to the law on this , matter.
A review of the transcript of the sentencing hearing is also instructive:
Q. (BY THE COURT): Mr. Washington, the Court has accepted your guilty plea in a two count indictment, count one is armed robbery and count two is aggravated assault, and I continued this for sentencing. Is there any reason why I shouldn’t sentence you at this time?
A. (WASHINGTON): No, sir.
BY THE COURT: I give you twenty-five years for aggravated assault, I mean for armed robbery and ten years on aggravated assault to run concurrent.
BY THE COURT, CONTINUING EXAMINATION OF THE DEFENDANT: Q. You understand what concurrent means; Mr. Barnwell [Washington’s attorney] has explained that to you?
A. Yes, sir.
Q. All right. That will be the sentence of the Court.
* * * * * *
BY MR. WASHINGTON: May I ask a question?
BY THE COURT: Sure.
BY MR. WASHINGTON: The twenty-five years is not mandatory, right?
BY THE COURT: No, this was not committed with a gun, so therefore the no parole doesn’t, that is not a part of this statute under which you pleaded.
BY MR. WASHINGTON:- I get good time?
BY MR. BARNWELL [Washington’s .attorney]: You get all the things you do under normal sentences.
BY THE COURT: The other is where, if it was committed with a gun you don’t get any good time. That’s not the case in this sentence....
Again, there was a misstatement of the law by the trial judge and Washington’s attorney to a direct question asked by Washington regarding his sentence.
After reviewing the transcripts of both the change of plea hearing and the sentencing hearing, it is apparent that Washington was not properly advised of the mandatory sentencing requirement. Although the State concedes that Washington was given erroneous information, their argument that the misinformation regarding parole eligibility could not have possibly induced Washington to enter a guilty plea seems disingenuous. The State reasons that the *970 mandatory ten years to be served was not a “consequence” of a guilty plea that Washington needed to be informed of in order to voluntarily plead guilty. Moreover, the State alleges Washington did not sufficiently plead reliance on the misinformation regarding his parole eligibility in making his decision to plead guilty until he raised the issue of inadequate representation later in his brief.
The State misses the point of Vittitoe. The issue is not whether Washington was sufficiently advised on his parole eligibility, but whether he was apprised of the mandatory sentence without parole consideration or the ability to accumulate “good time.” Scrutiny of the record shows that Washington was given erroneous information; moreover, the State concedes that Washington was inaccurately advised on this matter.
Washington should be given an opportunity to present his claims at an evidentiary hearing. At the hearing,, the State will have an opportunity to raise its concerns on whether or not Washington actually relied on the possibility of parole as a condition before he entered into the guilty pleas.
II.
DID WASHINGTON’S ATTORNEY RENDER INEFFECTIVE ASSISTANCE OF COUNSEL BY MISINFORMING WASHINGTON OF THE MANDATORY SENTENCING REQUIREMENTS UNDER WHICH HE WAS SENTENCED?
Washington contends that he received ineffective assistance of counsel during both the plea and sentencing phases. The claim of ineffective assistance of counsel is evaluated by the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland also applies to guilty pleas. Wilson, 577 So.2d at 396 (citing Schmitt v. State, 560 So.2d 148, 154 (Miss.1990)). The two-pronged Strickland test is: “(1) whether counsel’s performance was deficient, and, if so, (2) whether the deficient performance was prejudicial to the defendant in the sense that our confidence in the correctness of the outcome is undermined.” Neal v. State, 525 So.2d 1279, 1281 (Miss.1987).
The State concedes the first prong of the Strickland test by admitting in its brief that the performance by Washington’s counsel was deficient. It is clear from the transcripts of the change of plea and sentencing hearings that Washington was misinformed as to the mandatory minimum sentence he would be required to serve before becoming eligible for parole. This Court has held that when a criminal defendant alleges that he pleaded guilty without being advised by his attorney as to the maximum and minimum sentences he is subject to, a question of fact arises as to the proficiency of the attorney’s performance. Alexander, 605 So.2d at 1173 (citing Wilson, 577 So.2d at 396-397).
Regarding the prejudicial prong of Strickland, this Court has held that a question of fact arises concerning whether or not the defendant had been prejudiced, that is, whether the defendant would have entered the guilty plea if he had been properly advised. Alexander, 605 So.2d at 1173.
Washington has raised sufficient questions of fact on the issue of ineffective assistance of counsel. Therefore, we find that Washington is entitled to an evidentia-ry hearing on this matter as well.
III.
DID THE CIRCUIT COURT ERR IN DENYING WASHINGTON AN EVIDENTIARY HEARING?
Inasmuch as we have already determined that Washington is entitled to an evidentia-ry hearing further discussion of this issue is unnecessary. However, it should be noted that the State conceded in their brief that “Washington has alleged his case sufficiently to justify an evidentiary hearing.” The State maintains that although Washington has sufficiently alleged his case to warrant, an evidentiary hearing, he would not be able to prove at a hearing that his attorney’s advice as to parole eligibility in *971 fluenced his decision to plead guilty. Once again, the State is being disingenuous in its argument. The point of an evidentiary hearing is to determine such matters. Washington is therefore entitled to an evi-dentiary hearing.
CONCLUSION
Washington is entitled to an evidentiary hearing pursuant to Miss.Code Ann. §§ 99-39-13 through 90-39-23 (Supp.1992) on the voluntariness of Washington’s guilty plea, and on whether Washington was afforded effective assistance of counsel during the plea process. We therefore reverse and remand.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, and PRATHER, P.JJ., SULLIVAN, BANKS, McRAE and SMITH, JJ., concur.
PITTMAN, J., not participating.

. Rule 3.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1992) provides in pertinent part:
(3) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
******
B. That the accused understands the nature and consequences of his plea, and the *968 maximum and minimum penalties provided by law; ...